Good morning, Your Honors, and please, the Court, my name is William Margulis, and I represent the defendant, Helen Torrance Rogers. I sat through the arguments earlier this morning, and I'm going to break the trend of placing myself on up here, because I'll be awfully surprised if I'm still standing here when those lights don't blink. Mr. Rogers originally, this case dates back to 1999, it's got a somewhat complicated fact pattern, but Mr. Rogers was originally charged back in 1999 with aggravated battery of a child by knowingly causing serious bodily harm to a child by shaking, or it was a shaking baby syndrome case. The child did not die at that time. Mr. Rogers eventually pled guilty to the amended charge pursuant to plea negotiations, eventually pled guilty to the amended charge of attempted aggravated battery of a child. The child was a child that was two months old that he was babysitting while his girlfriend was schooling. Eventually, Mr. Rogers was sentenced to 15 years in the Illinois Department of Corrections as a result of the original charge. That sentence was appealed and upheld. That was the only issue that Mr. Rogers appealed at that time was the length of the sentence. Mr. Rogers served, I believe, about seven, seven and a half years before he was released. After he was released from the Department of Corrections, we're up to now, I think 2009, the child in 2009 became ill and was taken to the hospital and then eventually died in Cardinal Lennon Hospital in St. Louis. That was in 2009. Mr. Rogers was then subsequently indicted on a first degree murder charge and the case was continued several times and was ultimately tried with a stipulated defense trial back in July, July 10th, I believe, 2012. The stipulated defense trial basically consisted of each party stipulating to the other party's expert reports and medical examiner reports presented by the state and the court-appointed expert that was used by the defendant. There was one live witness that testified, I believe that was the girl's caretaker. The girl was about nine years old when she ultimately passed away in 2009. Let me ask a question about the stipulated defense trial in terms of what was stipulated to and considered. It's my understanding the trial court did take judicial notice of the previous file, the court file from the first search. That's correct, Your Honor. My question is that was not stipulated to, though. What was not? Did the defense not stipulate that the court could take judicial notice of that file? I did not represent Mr. Rogers at that time. I believe, I don't recall specifically from the trial transcript, I know that the state's attorney at the beginning of the trial or at some point during the beginning of the trial asked the court to take judicial notice of the trial without looking at the transcript. Whether there was an objection. That's what I was trying to figure out exactly what it was. In other words, is your claim that the court considered evidence beyond what was stipulated to? Well, one of our claims that we raised, Your Honor, in the brief was that the court took judicial notice of the original file going back to 1999. There was a motion in limine filed by the defense attorney to basically, for lack of a better phrase, to reopen the evidence from the original case and ask the trial court to consider, to let him present evidence and have the trial court consider the cause of the original injuries. And there was some dispute about that. And the court denied that motion in limine, which is the fourth issue that we raised in our brief. And I actually think that ties into the first issue that we raised in our brief, which is the sufficiency of the evidence. I think it presents somewhat of a confusing, complicated issue, and I've gone through it in my mind several times and talked about it several times trying to get it straight. But I think the whole issue that we raised with the sufficiency of the evidence as it relates to your question about what it was stipulated to is when you read the trial transcript, the judge denied the motion regarding whether they could dispute the original diagnosis of the shaken babysitter or what caused the original injuries. But if you look at the trial transcript and the judge's findings, there still is some talk about that. But the elements of the original offense, actually after it was amended, that he took a substantial step to knowingly causing the serious bodily injury, and then you look at the first-degree murder charge, which is that he knowingly caused serious physical injury resulting in death. The extra element being resulting in death, the death being caused by the serious physical injury. And I think the whole issue there is that what Mr. Rogers admitted to in his plea is knowingly causing serious physical injury, which was the basis for – well, taking a substantial step to that, which was the basis, the factual basis for the attempted aggravated battery of the child. But what I don't think you have is a factual basis that Mr. Rogers ever admitted to knowingly causing serious physical injury resulting in death. And so I think you can take his guilty plea as a judicial finding or judicial admission that he knowingly caused a serious physical injury, but I don't think you can take it a step further that he admitted to it resulting in death. So if you go back to the original facts, there were never any admissions or confessions or statements by the defendant where he ever admitted to causing the serious physical injury. I think his statements, according to the law enforcement officers involved in the original case of course, and I think he made some very apparent statements. Some were that he admitted to shaking the baby gently. He may have shaken the baby. I think one person said he held the baby up over its head. What's confusing me and the point I'm trying to get to is I'm trying to figure out what was the evidence that was stipulated to. In other words, what was the trial court supposed to consider? I haven't had a chance to look at the record yet. But, I mean, oftentimes when you have a stipulated bench trial, one side or the other will say, judge, we agree to the following facts. Make like an offer of proof. And then the other side will say, we agree with that, judge. Now, you take that evidence and decide the case. And conceivably, both sides could leave out a material element of the offense and the judge say, not guilty. That doesn't usually happen. But I'm trying to get a handle on what was the evidence that the judge was supposed to consider. You're talking about statements he made to the police at the time of the original charge. Was that part of the evidence? Was there a point where the state's attorney made a statement to the court and said, we're agreeing to this or that, or did you just shove the two medical reports to the judge? My understanding, judge, is that the defense, and when I say stipulated, I'm not saying that the defense, I guess I'm using the word in more they had an agreement that the state would submit the medical examiner's report and the defendant would submit their expert's report. I don't think the defendant necessarily was agreeing to what was in the report. In other words, I don't think that each party was agreeing to what was in the other expert's report. I think they were just agreeing, look, you submit your report, I'll submit my report, and we'll let the judge figure it out. Because if you look at the transcript of that hearing or trial, after they each submitted their report and after they had one live witness testify, well, then each side gave a pretty extensive argument as to their position. So in the defense's argument, he disputed the report, he disagreed with the report, the medical examiner filed, and the state disputed and disagreed with the report that the defense filed. So as I said, I don't think they stipulated the fact that the judge could rely on the respective courts. And what else was the judge supposed to rely on in determining whether or not the material elements of the offense had been proven? Well, the only other thing would be when the court took judicial notice of the earlier case, which would be, you know, the state's position was that the defendant had already admitted all the essential elements in the original case. So they asked the court to take judicial notice of that. So you were both operating on the presumption that the only question for the court to decide was causation? Correct. Okay. And the trial court, when it referred to the first case, said it was not relying upon that and had used the current evidence, not the past evidence, to accept the plea. Correct. Okay? Right. And you argue that the defendant never admitted the aggravated battery, but that's not required. Would you agree with that? I would agree with that. I think what I'm really arguing is that the defendant never admitted at the plea the essential elements of the first degree murder charge, which would mean that the evidence would have to be presented in some other way, which, focusing on the element of knowingly, since there was no admission that he normally caused serious physical injury resulting in the actual death, that it would most, you know, and that's why I was talking about the statement before, is that, you know, without a direct admission by the defendant, the only way the knowledge or knowingly element would be satisfied is basically through circumstantial evidence, which means you would have to look at the surrounding facts and circumstances of the events as they happened at the time in 1999, whatever happened in the apartment or the house where they were living that caused these events. And there are, there was another case, I can't recall the name of it, where the court said that the knowingly element was satisfied because the defendant had actually, had actually taken the child and sought medical help immediately after he realized something was wrong, and that the court said showed that he had knowledge that he had done something, you know, pretty big to the child because he immediately sought medical help. Here we don't have that element, or we don't have those facts, and that's why, that's where my fourth issue kind of ties in with the first one, and to the denial of emotion preliminary, is that I think that in order to prove the knowingly element by circumstantial evidence, you have to go back to the original facts and the original circumstances surrounding the events and permit the defendant to have raised those arguments and issues in the trial of this case, which would go back to the actual cause of the injuries, you know, how violent was the baby's shape and what were the, you know, what statements did the defendant make, what were the specific injuries and all those sorts of issues that were, that would go to the issue of his element of knowingly causing serious physical injury leading to death. Do you agree that it would be sufficient if his acts contributed to the death, not necessarily just caused it? I would agree with that, yes. The other, if there were any other questions on that issue, the other issue I wanted to address is the second issue that we raised was the waiver, the jury trial, and I do want to address that because the, you know, the defendant did have a fundamental six-amendment right to a jury trial, and I think his rights were violated. Now, we don't contest that he signed an open waiver, a written waiver in open court. He did do that. What we're contesting is that he did not do so understandingly, and the fact that he signed the waiver in open court, you know, I know is, you know, on his face is evidence that he did so knowingly and with a full understanding of his rights, but in order to really make that determination, you have to look at the facts and circumstances of each situation in each case, and in this particular case, first of all, we have a client, a defendant with an 11th grade education. We have a defendant who has spent the majority of his adult life in the Illinois Department of Corrections as a result of the original case. I think he was only 18 or 19 years old when the original case happened. We also have a defendant who has a documented history of some mental issues and mental competency, and he was, there was a fitness evaluation done a couple years prior to his waiver of the jury trial. Now, the questioning of the defendant regarding this issue covers less than one page of the trial transcript, and it's basically from line 17 on page 3 to page 4 of line 20, and it covers the basic questions. Now, I think, you know, I think a perfect example is when the doctor, who I believe it was who did the fitness evaluation, and the client has a documented history of some hallucinations and other issues in jail. Ultimately, the doctor determined that he was fit to proceed. He understood the charges against him. He was competent to proceed. He knew right from wrong. However, a perfect example is when the doctor started the evaluation, which they always do when they explain the limited rules of confidentiality, that, hey, you know, your attorney is going to get this report, and the judge is going to see it, and the prosecutor is going to see it, so when he states that you made the report, you're going to be able to see it. And the doctor explained that to him, and the defendant never affirmatively stated he understood that. How long was that before his jury waiver in open court? It was about two years, I believe. Okay. Back in 2010. And is there anything in the record? I mean, the record, as you kind of acknowledge, pretty clearly shows a waiver. Right. And he answers all the questions. I mean, is there anything in the record after that date that shows that he was examined again and somebody questioned his competence or anything like that? There is not, Your Honor. Not two years between the original evaluation and this proceeding. Right. My point is that ---- I'm just trying to figure out how it is from the record. I mean, the cold record shows a waiver. Right. Right. My point is that with that history that we have in this case, the things that I cited, first of all, we have a first-degree murder charge, a serious issue you can get with it, a serious punishment. We have a defendant with an 11th-grade education. We have a defendant who's been in the Department of Corrections his entire adult life. And we have a defendant with some history of medical competency. And it may be two years old. But that specific questioning by the doctor, and when the defendant nods his head that he understands, when the doctor asks him to explain the fact, the defendant's response is, I don't really know. And he asked him that again, and he got the same response. So what I'm saying is that I think the judge here should have made more of an extensive record, taking into consideration all those things, his waiver of insurance. Because my guess is that if the judge would have asked the defendant to explain back to me what I just explained to you, he would have gotten a similar response, I don't really know. There's no discussion in the trial transcript about, you know, you understand you're charged with first-degree murder. You understand that there's a punishment range of 20 to 60 years. You know, you understand the serious nature of the charges. You understand that at a jury trial you would have the right to confront across examine witnesses. I mean, with the jury, that if all 12 jurors would have to rule unanimously that you're guilty. The trial judge was pretty generic in his questioning of the defendant. He didn't go into any of the specifics, and that's what I'm getting at, is I think based on the history of this case and this particular defendant, that more of a record should have been made. Is there anything in the record to dispute Dr. Quinio's evaluation that he found the defendant fit to stand trial? No, Your Honor, not that I'm aware of. That's all I wanted to argue unless there's any further questions. Thank you. Your Honors, counsel, may it please the Court, Kelly Stacy appearing on behalf of the people. I thought I'd start out by addressing Justice Stewart's question concerning the stipulations of the reports. On page 10 of the people's brief, about the third paragraph down, the party stipulated to the reports of the medical examiner of the city of St. Louis, and that included a neuropathology examination, the postmortem examination, the narrative report of investigation, and the closing report. All of those were admitted as people's exhibits, and the stipulation was the admission of the reports. For the defense, it was a defense expert. I believe you pronounced her name Dr. Sheku Teos. Those were the reports that were admitted. But that was everything that the court was then supposed to consider in deciding the case? I didn't hear the first part of that. Was that then everything that the court was supposed to consider in deciding the case? I believe that's the evidence that was presented with respect to the medical evidence. There was also the maternal great aunt who was the caretaker of the retailer who testified at the case. The rest of it was argument and then judicial notice of the prior case. Okay, and when the judge took judicial notice of the prior case, what did that mean as far as what evidence in that court file he was considering? There was information concerning the elements of the reduced charge of attempt, aggravated battery of a child. There was also the Rule 23 order that this court issued in that case. All that was to be considered as evidence? All of that was part of the judicial notice. And one of the things in that 1999 case that came up was similar to what came up in this case, and that is the defendant arguing, well, you know, I didn't really take anything beyond a substantial step. I never admitted that I knew what I did could cause great bodily harm. And this court said that at the sentencing hearing, the defendant could not repudiate the judicial admission he already made on the attempt, aggravated battery of a child case. And in this court's prior Rule 23 order at page 12, the court found the defendant's guilty plea was a judicial admission that he had the intent to cause the victim great bodily harm. So the additional element that the state had to prove was that in addition to the intent to cause the victim great bodily harm, that the victim also died. Now, in this case, it did take the victim 9 years and 28 days to die. And she essentially languished from the time that she was shaken. She lived a very tragic life. This court, I'm sure, is aware of the Rule 23 order, or if not, will be reading that. In any event, when the defendant is challenging the sufficiency of the evidence, what this court reviews is whether after viewing the evidence in the light most favorable to the prosecution, the rational prior effect could have found the essential elements of first-degree murder beyond a reasonable doubt. I believe that's been overwhelmingly established in this case. Again, the state had to establish that the defendant's act knowingly caused great bodily harm. That has been met, and it's been met through judicial admission, that the defendant cannot now bring in any information contraverting that, any evidence to repudiate that. And then the reports regarding the victim's death, those were extensive reports that were taken. The medical examiners, there were two of them that conducted the autopsy. They determined that this was death that was caused by traumatic brain injury that occurred in 1999. That later developed into pneumonia. Because of the victim's severely diminished medical state, she had acquired cerebral palsy. She was never able to stand on her own. She was never able to lift her arms, never able to feed herself. She was incontinent with bowels and bladder. She essentially lived a life confined to a wheelchair. They had a device that allowed her to stand up on occasion, but she really couldn't do anything on her own. So the fact that she had that prior existing medical condition caused by the defendant made her more susceptible to bouts of pneumonia. That's not an uncommon thing, and the state had established that at the trial. And again, as the defendant did during his first appeal, he argues that he did not intend to injure Taylor, and no one ever told him shaking an infant could cause harm. He argues that at most he is guilty of involuntary manslaughter. Again, this court's Rule 23 order was considered by the trial court. The trial court held that the prior guilty plea was a judicial admission, and that was going to be held against the defendant. The defendant also argues that his expert's report was not given as much deference as he believes it should. The weight given to medical reports stipulated to you by the parties, that is up to the decision of the trial court to evaluate that medical evidence. I think there were some glaring things in Dr. Taos's report. She talked about, well, some things could be caused by a premature birth. Maybe a neuroradiologist could go back and examine all of the CT scans that were done and do a more comprehensive report. I think one of the biggest things on her report is she couldn't come to any kind of a conclusion. She's essentially saying, well, somebody else really needs to come in who has a little bit better expertise on this and reevaluate it. And I think the trial court seemed to look at that and said, you know what, this was a two-and-a-half to three-month-old infant, full term. She had no medical problems at all in her first two to three months of life. Immediately after this, she became unresponsive, comatose. So the fact that all these other things could have happened, a brain aneurysm or any of these other things could have caused some of this, that doesn't really get to the issue because that's not what occurred in the case. I want to point out to the court on this first issue of the sufficiency of the evidence, a 2010 Illinois Supreme Court case, I hope I'm pronouncing it right, People v. Aminhon, citing the state's brief. In that case, a victim died of pneumonia several years after being shot by a defendant, and the court held in that case that a causal link is not precluded, even where it appears the victim has completely recovered from the injuries in the intervening time, between the time of the original injuries and the time of death of the person. Again, Taylor was a normal, healthy infant when she was shaken by the defendant. Those injuries she received set in motion the chain of events that led to her eventual death nine years later. Viewing the evidence in the lightness favorable to the prosecution, a rational fact finder could find the essential elements of first-degree murder were proven beyond reasonable doubt. On issue two, with regard to the jury waiver, there's no doubt that the defendant waived his right to trial by jury. In open court, the judge explained in a jury trial there will be 12 people that will be selected. If you decide to give up your right to trial by jury, the only one that's going to be deciding your guilt or innocence in the case is me, the judge. It is true that at one point in the first two weeks the defendant was in jail, he exhibited some strange and bizarre behaviors in jail. But upon Dr. Cuneo's examination of that, what the defendant told him was he had fallen off of a ladder and broken his ankle. He had to have an open reduction and extensive surgery to the ankle. He was placed on Vicodin, which apparently he had never been on before, and it caused him to have some bizarre behaviors. He thought he saw somebody in the jail cell with him. He was beating his crutch on the wall and acting kind of strange. I think he tore a shower curtain off. But the defendant himself told Dr. Cuneo, I asked to be taken off of that medication, and when I was, I didn't have any more problems. It was only two and a half years after that that the defendant is now raising almost two and a half years, I think it's two years and five months, that his mental capacity was in question during the trial. There was a point it was in question, but Dr. Cuneo found him fit to stand trial. He understood what a trial was. He understood the roles of the defense attorney, the state prosecuting attorney, and the judge. And Dr. Cuneo found that he could properly assist in his defense. And again, after that initial two-week period, once the defendant stopped taking the Vicodin, he didn't have any more bizarre behaviors. His symptoms all returned to normal, and no other fitness issues ever came up in the case. With regard to the double jeopardy issue raised by the defendant in argument three, I just wanted to point out to the court, the seminal case on that is People v. Carrillo. It's an Illinois Supreme Court case from 1995. And that case held that in cases where double jeopardy might otherwise be implicated, an exception exists where the state is unable to proceed on a more serious charge because the facts necessary to sustain that charge have not yet occurred. In the Carrillo case, a victim was shot and paralyzed in 1979, languished for nine years, and then ultimately died. In this case, because Taylor did not die right away, but also languished and had a declining medical condition in all those years, and then later succumbed to pneumonia, that earlier 1999 conviction for attempt, aggravated battery of the child, does not preclude a subsequent conviction for first degree murder because the thing missing in that 1999 case is obviously the death. The medical examiner concluded this case was delayed death by homicide. The trial court found that that report was accurate. Again, if we're looking at competing expert reports, that's an issue up to the finder of fact. It is up to the finder of fact to determine the cause of death, and the judge, I believe, properly determined the cause of death in this case. On issue four, raised by the defendant, is an attempt to re-litigate the 1999 shaken baby case. And he's arguing the trial court abused its discretion by refusing to allow him to go back and open up argument on that issue. The state believes that this court has no jurisdiction to consider that issue because that had to have been brought up within 30 days of filing a post-trial motion on the 1999 case. I believe the Supreme Court Rule 606 precludes this court from reaching that issue, but if this court determines that it, in fact, does have jurisdiction to reach that issue, then the court should find that the defendant's guilty plea in 1999 to knowingly causing great bodily harm to Taylor established a factual basis for his conviction for first-degree murder, especially when you consider the medical examiner's reports showing that the death was delayed death by homicide. The defendant's act of shaking Taylor was the proximate cause of her death where there was no legal supervening cause of that death. In preparing for this case, two things really stood out for me on this case. The first was the overwhelmingly sad fact pattern in the case. And the second is the great care the trial court took in developing a statement of facts, setting forth the arguments of the parties, and then applying an analysis to that. I believe the trial court did an excellent job in this case. It was an extensive seven-page ruling, and there being no questions, we would respectfully request you to affirm. Thank you, Your Honors. I just have two quick points I wanted to respond to, and they both really have to do with this fourth issue. First of all, I believe this court does have jurisdiction to rule on the fourth issue because what we're appealing is the trial court's denial of the defendant's motion to contest the cause of the original injuries. To present evidence for the issue. So what we're specifically asking this court to do is to review a ruling of the trial court in this trial in 2012. We're not asking this court to rule on some finding or ruling that was made in the original case 13 years ago. And with respect to that, again, I just wanted to point out that the judicial admission in the original case does not go to all the elements of the first-degree murder charge, which is why I believe that the evidence should have been presented on the cause of the original injuries and the causation to this death 10 years later. Thank you. Thank you, counsel. Thank you, guys. Five minutes again.